**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **INSTRUMENT & VALVE SERVICES COMPANY** | **CIVIL ACTION NO. 3:17-cv-223** |
| **VERSUS** | **SECTION "_____"** |
| **THE BURT GROUP, INC.** | **MAGISTRATE "_____"** |

# COMPLAINT

**NOW INTO COURT** comes Plaintiff, Instrument & Valve Services Company ("IVS"), by and through its undersigned counsel, and for its Complaint against The Burt Group, Inc. ("The Burt Group"), formerly known as Burt-Watts Industries, Inc., avers:

## PARTIES, JURISDICTION, AND VENUE

1.

Plaintiff, Instrument & Valve Services Company, is a Delaware corporation with its principal place of business in Marshalltown, Iowa. IVS is licensed to do and doing business in the State of Louisiana.

2.

Defendant, The Burt Group, Inc., is a Texas corporation with its principal place of business in Austin, Texas. The Burt Group, Inc. was formerly known as Burt-Watts Industries, Inc.

3.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a), insofar as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is

between citizens of different states.

4.

Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2), as the events giving rise to this action occurred, and the property that is the subject of this action is situated, in this judicial district. In the alternative, venue is proper pursuant to 28 U.S.C. §1391(b)(3), as this is a judicial district in which The Burt Group is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

**THE CONSTRUCTION OF THE EMERSON SERVICE CENTER**

5.

IVS specializes in the maintenance and repair of machine instruments and control valves, which requires facilities for its service operations and office space for its administrative personnel.

6.

At all material times, The Burt Group was and is a general contractor licensed in the state of Texas and authorized to do and doing business in state of Louisiana.

7.

On September 20, 2013, IVS purchased 17.57 acres of land located at 3535 Emerson Parkway in Gonzales, Louisiana, with plans to build a regional campus for its offices, training centers, customer relationship interfaces, service operations, and operations of other entities related to IVS. The facilities at this address are now commonly known as the "**Emerson Service Center**."

8.

After soliciting and receiving bids for the construction of the Emerson Service Center,

IVS contracted with The Burt Group as the general contractor for the project.

**THE CONSTRUCTION CONTRACT AND AGREEMENT BETWEEN THE PARTIES**

9.

On or about October 1, 2013, IVS entered into an agreement with The Burt Group entitled a "**Notice to Proceed**" by which The Burt Group contracted to provide site mobilization, "ground work," and other services as a general contractor in connection with the construction of the Emerson Service Center.

10.

The Notice to Proceed attached and incorporated a Contract Between Owner and Contractor (the "**Construction Contract**"), the terms and conditions of which govern and apply to all services of The Burt Group as a general contractor in connection with the construction of the Emerson Service Center.

11.

Alternatively, on or around October 1, 2013, IVS entered into an oral construction contract and subsequent thereto entered into various oral and written agreements with The Burt Group, as general contractor, for the construction of the Emerson Service Center (the "**Construction Project**").

12.

Pursuant to its obligations under the Construction Contract and/or oral and other written contractual agreements with IVS (the "**Construction Agreements**"), The Burt Group was at all material times the general contractor for the Construction Project.

13.

As the general contractor for the Construction Project, The Burt Group was responsible for supervising all subcontractors it hired to perform construction services in connection with the project and ensuring that the Emerson Service Center was built in accordance with the applicable specifications and drawings, generally applicable construction standards, all pertinent building codes and ordinances, and the standards set forth in the Construction Agreements.

14.

The Burt Group, in this regard, agreed in the Construction Agreements to and did in fact supervise all services performed in connection with the Construction Project and agreed to be responsible for any deficiencies in the construction, regardless of whether a third party is also at fault.

15.

Pursuant to the Construction Agreements and Louisiana law, The Burt Group warranted that the Emerson Service Center would be free from defects or deficiencies in workmanship or materials and would conform to the requirements of the drawings and specifications provided to The Burt Group.

16.

The Burt Group also expressly warranted that all materials and equipment furnished would be "free from failure under ordinary usage" for a period of one year from completion of the project.

17.

Section 3.4.2 of the Construction Contract creates an express warranty of The Burt Group that, among other parts of the Emerson Service Center, its roofing system would be free from

defects for a period of one year, regardless of whether The Burt Group properly installed the roof.

18.

The warranties provided by The Burt Group pursuant to the Construction Agreements also apply regardless of whether construction defects were caused by the fault of a third-party or by activities of IVS or its architect or consultants.

19.

The Construction Agreements and Louisiana law require that The Burt Group promptly repair, replace or correct, at its cost, any deficiencies or defects in the construction of the Emerson Service Center.

20.

In the event that The Burt Group fails to properly repair, replace or correct defects in the construction of the Emerson Service Center, then the Construction Agreements and Louisiana law give IVS the right to do so, at the cost of The Burt Group.

21.

The Construction Contract further provides that, in the event that The Burt Group fails to correct deficiencies and defects in workmanship or materials of the Emerson Service Center or otherwise satisfy the terms of the contract, IVS may recover, among other damages, compensation for the costs of professional services made necessary thereby.

22.

The Construction Contract also provides for attorneys' fees to the prevailing party in any lawsuit arising out of a breach thereof.

**THE CONSTRUCTION DEFECTS IN THE EMERSON SERVICE CENTER**

23.

The Emerson Service Center, as designed and constructed, is a pre-engineered metal, single story building with about 145,000 square feet of "under roof" space and a metal panel roofing system.

24.

Pre-engineered building and roofing materials for the Emerson Service Center were supplied by Schulte Building Systems ("**Schulte**").

25.

Schulte provided The Burt Group with, among other things, specifications for the installation of the roofing system of the building.

26.

Schulte agreed to provide a warranty on the roof after an inspection to confirm its proper installation by The Burt Group.

27.

Almost immediately upon its occupancy of the Emerson Service Center, IVS began to notice within the building damage to interior finishes, water stains, water leaking from ceilings, damage to insulation, and other indications of water intrusion, which problems continue to the present and were caused by the defective, deficient and substandard construction, workmanship and/or installation of the Emerson Service Center and/or its components by The Burt Group.

28.

In particular, IVS has identified dozens of roof leaks, causing substantial water intrusion into the Emerson Service Center during rain events, which has caused flooding in areas of the

building and substantially disrupted IVS' business operations.

29.

On or about October 20, 2015, a representative of Schulte inspected the Emerson Service Center and identified 70 defects in the construction, workmanship, and/or installation of the roofing system of the building. Because of these defects, Schulte declined to issue a warranty for the roof.

30.

IVS has also identified and called to the attention of The Burt Group numerous other defects in the workmanship and materials of the Emerson Service Center.

31.

The services of The Burt Group as a general contractor in connection with the construction, workmanship, and/or installation of materials for the Emerson Service Center include, without limitation, the following (collectively, the "**Construction Defects**"):

a. defective construction, workmanship, and/or installation of the roofing system;

b. defective construction, workmanship, and/or installation of the roof flashing systems;

c. defective construction, workmanship, and/or installation of roofing materials causing roof penetrations and numerous holes in the materials installed;

d. defective construction, workmanship, and/or installation of the sealant system used to seal around openings and penetrations in the roof and exterior walls;

e. defective construction, workmanship, and/or installation of the exterior wall systems, including, but not limited to, selection of inappropriate component parts of the exterior wall assemblies and failure to properly seal joints and gaps in the

exterior of the building;

f. defective construction, workmanship, and/or installation of the "side laps" and "end laps" of roofing panels;

g. defective construction, workmanship, and/or installation of the roof insulation;

h. defective installation of concrete areas in the parking lot of the building, causing substantial buckling and cracking of the concrete;

i. the failure to hire qualified subcontractors and/or failure to supervise subcontractors who performed services in connection with the Construction Project; and

j. any and all other defects in construction, workmanship and/or installation to be shown at the trial of this matter.

32.

The Burt Group also failed to complete numerous "punch list items" as it was obligated to do under the Construction Contract, Construction Agreements and/or as the general contractor for the Construction Project, including, but not limited to, the following (collectively, the "**Punch List Items**"):

a. replacement of roof insulation in certain areas of the Emerson Service Center, including, but not limited to, the PSS area and the Rosemont calibration room;

b. installing, reattaching, taping, and sealing roof liner materials in all areas of the Emerson service Center;

c. replacement of ceiling and carpet tiles damaged by roof leaks;

d. fire caulking in the "EIM" area of the Emerson Service Center;

e. closure of penetration of light and air in areas between the roof and exterior walls

in numerous areas of the Emerson Service Center;

f. wiring of heat stripping on the north side of the water main of the building;

g. repair of the north light pole at the building, which has not operated properly since installation;

h. repair of loose piping in the "above ceiling" areas of the building; and

i. all other "punch list items" to be proven at the trial of this matter.

33.

The Burt Group has failed to pay an invoice in the amount of $9,473.20 for utilities used during the Construction Project, as it was obligated to pay under the Construction Contract and/or the Construction Agreements.

34.

IVS has given The Burt Group notice of the foregoing deficiencies and defects in the construction, workmanship and/or installation of the Emerson Service Center, but The Burt Group has failed to correct the defects as required under the Construction Contract, the Construction Agreements, and Louisiana law after being afforded a reasonable period of time to do so.

35.

As a result of The Burt Group's failure to correct the deficiencies and defects in the construction, workmanship and/or installation of the Emerson Service Center, IVS was required to retain an architect to inspect the roof and other areas of the Emerson Service Center and determine appropriate repairs.

36.

As it is authorized to do under the Construction Contract, the Construction Agreements

and Louisiana law, IVS intends to correct the deficiencies and defects in the construction, workmanship and/or installation of the Emerson Service Center and replace the roof of the building in its entirety.

**FIRST CAUSE OF ACTION: BREACH OF CONTRACT**

37.

The allegations contained in paragraphs 1 through 36 of this Complaint are incorporated herein as if set forth *in extenso.*

38.

IVS entered into the written Construction Contract with The Burt Group to perform services as a general contractor in constructing the Emerson Service Center.

39.

In the alternative, The Burt Group entered into an oral agreement and/or various written agreements with IVS to perform services as a general contractor in constructing the Emerson Service Center.

40.

The Burt Group breached its contract with IVS by failing to complete construction of the Emerson Service Center in conformity with the Construction Contract and/or Construction Agreements and related documents and by failing to follow generally accepted construction practices for the Gonzales area. Such breach includes, but is not limited to, defective construction, workmanship, and/or installation of the roof of the building and other portions of the building and other items related to the Construction Defects; the failure to complete the Punch List Items; and the failure to pay the utility expenses while the Construction Project was underway.

41.

The Burt Group's breach of contract has caused a diminution of value of the Emerson Service Center, costs and expenses associated with remedial work that is being performed or is to be performed in the future by IVS, and substantial disruption to IVS' business operations.

42.

IVS fulfilled its obligations under the Construction Contract and/or Construction Agreements with The Burt Group.

43.

Therefore, The Burt Group has materially breached the Construction Contract and/or Construction Agreements with IVS and is liable to IVS for all damages resulting from the breach, including, without limitation, the cost of the replacement of the roof and completion of punch list items, diminution in the value of the Emerson Service Center, consequential damages, and fees of architects, engineers, contractors and other consultants, together with legal interest from the date of default, reasonable attorneys' fees, and all costs of these proceedings.

**SECOND CAUSE OF ACTION: BREACH OF EXPRESS WARRANTY**

44.

The allegations contained in paragraphs 1 through 43 of this Complaint are incorporated herein as if set forth *in extenso.*

45.

The Burt Group expressly warranted that the materials and construction of the Emerson Service Center would be free from defects for a period of one year after substantial completion.

46.

The materials and construction of the Emerson Service Center including, without

limitation, Construction Defects, were defective within one year of any substantial completion by The Burt Group.

47.

IVS fulfilled its obligations under the Construction Contract with The Burt Group.

48.

Therefore, The Burt Group has materially breached the Construction Contract and/or the Construction Agreements with IVS and is liable to IVS for all damages resulting from the breach, including, without limitation, the cost of replacement of the roof and completion of punch list items, diminution in the value of the Emerson Service Center, consequential damages, and fees of architects, engineers, contractors, and consultants, together with legal interest from the date of default, reasonable attorneys' fees, and all costs of these proceedings.

**REQUEST FOR TRIAL BY JURY**

49.

Plaintiff, IVS, requests a trial by jury on all issues.

**WHEREFORE**, Instrument & Valve Services Company prays that The Burt Group, Inc. be duly cited to appear and answer this Complaint and the Court enter judgment in favor of Instrument & Valve Services Company and against The Burt Group, Inc., awarding the relief described above, and for damages, plus costs, attorneys' fees, expenses, and interest, and for all further relief this Court deems just and proper.

Respectfully submitted,

**FRILOT L.L.C.**

*/s/ Everett R. Fineran*

John J. Hainkel, III, #18246
Everett R. Fineran, #31153
1100 Poydras Street
3700 Energy Centre
New Orleans, Louisiana 70163
Telephone: (504) 599-8000
Facsimile: (504) 599-8100
jhainkel@frilot.com; efineran@frilot.com
***Attorneys for Plaintiff, Instrument and Valve Services Company***